## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BRIDGETTE MCCOY**                                   **CIVIL ACTION**

**VERSUS**                                            **CASE NO. 15-398**

**HOUSING AUTHORITY OF NEW ORLEANS, et al.**     **SECTION: "G"(2)**

## ORDER

Pending before the Court is Defendant Housing Authority of New Orleans' ("HANO")

"Motion for Summary Judgment."[1] Having considered the motion, the memoranda in support and

in opposition, the applicable law, and the record, the Court will grant the motion.

## I. Background

***A.   Factual Background***

In her complaint, Plaintiff Bridgette McCoy ("McCoy"), originally proceeding *pro se*,

alleges that she is a public housing resident living in a housing complex owned by HANO and

managed by private corporation Interstate Realty Management Company ("IRMC").[2] She appears to

allege that she was wrongfully evicted from her residence following her arrest on April 19, 2014

for public intoxication and fighting with another resident.[3] Following McCoy's arrest, IRMC filed

a "rule for possession," or eviction proceeding, against McCoy.[4] A Louisiana state trial court

initially found that she violated the housing complex's one-strike policy by being involved in a

---

[1] Rec. Doc. 86.

[2] Rec. Doc. 1.

[3] *Id.* at 3.

[4] *Id.* at 4.

1

fight on the complex grounds.[5] However, on March 18, 2015, the Louisiana Fourth Circuit Court of Appeal reversed the decision, finding that no proof existed to show that McCoy engaged in the alleged criminal acts, and noting that the criminal charges against McCoy had been dismissed by the New Orleans Municipal Court on June 6, 2014.[6]

**B.      *Procedural Background***

McCoy filed this lawsuit on February 2, 2015.[7] On December 17, 2015, the Court granted in part and denied in part a motion to dismiss filed by Defendants Jeffrey A. Clayman and James Ryan III & Associates, L.L.C.'s, the attorneys who had represented IRMC in the eviction proceedings in state court.[8] After Plaintiff failed to submit an amended complaint, which the Court had granted her leave to do, the Court dismissed with prejudice Defendants Clayman and James Ryan III & Associates.[9] On May 24, 2016, the Court granted a motion for summary judgment filed by Defendants Housing Authority of New Orleans Police Department ("HANO PD") and Officer Silas Phipps, Jr. ("Phipps"), dismissing all claims against them.[10]

HANO filed the instant motion for summary judgment on March 9, 2016.[11] McCoy filed an opposition on March 24, 2016.[12] On March 25, 2016, with leave of Court, HANO filed a reply.[13]

---

[5] *Estates New Orleans v. McCoy*, 2014-0933 (La. App. 4 Cir. 3/18/15); 162 So. 3d 1179, 1181.

[6] *Id.* at 1182–83.

[7] Rec. Doc. 1.

[8] Rec. Doc. 51.

[9] Rec. Doc. 58.

[10] Rec. Doc. 143.

[11] Rec. Doc. 86.

[12] Rec. Doc. 110.

[13] Rec. Doc. 112.

## II. Parties' Arguments

### A.      HANO's Arguments in Support of Summary Judgment

In support of summary judgment, HANO avers that McCoy resides in a privately owned apartment in The Estates f/k/a Desire Housing ("The Estates"), and receives housing assistance from HANO through its Section 8 Housing Choice Voucher Program ("HCVP").[14] According to HANO, after McCoy was arrested for disturbing the peace by fighting and public intoxication, The Estates' management company attempted to evict her.[15] HANO contends that although McCoy now brings claims for violations of her due process rights under the Fourteenth Amendment, §§ 1983 and 1985, and the U.S. Housing Act 24 C.F.R. 966.54 and 42 U.S.C. § 1937(f)(o)(18)(C), as well as state claims for breach of lease agreement and abuse of process, malicious prosecution, and conspiracy under Louisiana Civil Code article 2315, HANO should be dismissed from this suit.[16] Specifically, HANO contends, all claims against it should be dismissed because: (1) HANO never deprived Plaintiff of a property interest, so no due process was triggered; (2) there is no vicarious liability under 42 U.S.C. § 1983; (3) HANO never had a lease with McCoy; (4) HANO is not directly or vicariously liable for malicious prosecution or abuse of process; and (5) there is no evidence that the defendants conspired to have McCoy evicted.[17]

As background, HANO avers that "[m]any of McCoy's claims against HANO derive from her misguided belief that she resides in public housing owned by HANO when, in fact, she lives

---

[14] Rec. Doc. 86-3 at 1.

[15] *Id.*

[16] *Id.*

[17] *Id.* at 1–2.

in a privately owned apartment."[18] According to HANO, it operates several programs by which low income families receive housing assistance in residential communities, including: (1) public housing, which is comprised of housing units owned by HANO where the tenant leases directly from HANO; and (2) HCVP, known as Section 8, by which the vouchers given to participants are either tenant-based or project-based.[19] HANO asserts that a tenant-based voucher allows the participant to select an apartment anywhere in the parish, whereas a project-based voucher allows the participant to rent a privately owned apartment in a residential community that is comprised of both HANO-owned and privately owned apartments.[20] HANO cites *Abundance Square Associates v. Williams*, a Louisiana Fourth Circuit Court of Appeal case describing the history of the Abundance Square development, where McCoy resides.[21] According to HANO, *Williams* explains that the apartments in the development would be owned by Abundance Square Associates until the lease expired in 2077, and that of the qualified low-income units within the development, 48 had to be operated as "public housing" under Section 3(b) of the U.S. Housing Act, and 14 were to be Section 8 "project based vouchers."[22]

HANO avers that McCoy resides in one of the fourteen Section 8 "project based" apartments in Abundance Square Apartments ("Abundance Apartments"), a/k/a The Estates.[23] Therefore, HANO contends, McCoy receives housing assistance through HANO to live in a

---

[18] *Id.* at 2.

[19] *Id.*

[20] *Id.*

[21] *Id.* at 2–3 (citing 2010-0324 (La. App. 4 Cir. 3/23/11); 62 So. 3d 261, 262–63).

[22] *Id.*

[23] *Id.* at 3.

privately owned apartment, and her lease is with Abundance Apartments, not HANO.[24] According to HANO, as part of the operating agreement between HANO and Abundance Square Associates ("Abundance Association"), the Abundance Association must retain an agent to manage HANO-assisted units in The Estates in accordance with federal law.[25] HANO further claims that in October of 2002, the Abundance Association signed a management agreement with IRMC, in which IRMC agreed to manage the properties in compliance with U.S. Department of Housing and Urban Development ("HUD") regulations.[26] Pursuant to the agreement, HANO argues, some of IRMC's duties included resident selection and admission, execution of leases, and evictions.[27] Thus, HANO claims, it does not make any direct decisions regarding evictions, nor does it pursue eviction proceedings, as those responsibilities contractually belong to IRMC.[28]

HANO recounts the events that it alleges led to the eviction proceedings against McCoy in state court, which are addressed at length in this Court's order on HANO PD Defendants' motion for summary judgment.[29] According to HANO, the lease between McCoy and Abundance Apartments required McCoy to conduct herself in an orderly manner that does not disturb the neighbors' peaceful enjoyment of the property, and prohibits her from engaging in criminal activity.[30] HANO claims that on May 7, 2014, General Manager Odeal Skidmore-Davis

---

[24] *Id.*

[25] *Id.* at 3–4.

[26] *Id.* at 4.

[27] *Id.*

[28] *Id.*

[29] *See* Rec. Doc. 143.

[30] Rec. Doc. 86-3 at 6.

("Skidmore-Davis") delivered a Notice of Infraction to McCoy's home stating that she had violated her lease on April 19, 2014 by fighting, being drunk, and engaging in illegal activity.[31] On the same date, HANO argues, McCoy received a 5-day Notice to Vacate the housing unit for allegedly violating the One-Strike Policy, which permits termination of the tenancy upon discovery of a resident's "abuse or pattern of abuse of alcohol that affects the health, safety, or right to peaceful enjoyment of the premises by other residents or staff."[32] According to HANO, The Estates, not HANO, then filed a rule for possession on June 5, 2014, as HANO does not authorize, approve, or become involved in any eviction of a tenant from a unit in The Estates.[33]

HANO asserts that the rule for possession was granted after a hearing on June 30, 2014, but was reversed on March 18, 2015 by the Fourth Circuit Court of Appeal on the basis of insufficient evidence presented at the municipal court level.[34] Therefore, HANO avers, the eviction was rescinded, and in fact McCoy was never evicted from her apartment.[35] According to HANO, when McCoy's case worker at HANO, Toni Battiste ("Battiste"), was notified by Skidmore-Davis that a Notice to Vacate had been issued, Battiste explained that she only needed to know when the eviction was final, because when a project-based tenant is evicted, HANO has the discretion to either relocate the tenant to another project-based apartment, or terminate the financial assistance.[36]

---

[31] *Id.*

[32] *Id.*

[33] *Id.* at 7.

[34] *Id.*

[35] *Id.*

[36] *Id.*

In this case, HANO contends, although McCoy alleges that HANO deprived her of a property right without due process and is vicariously liable for HANO PD's arrest of her, until the instant matter was filed, HANO never knew that a rule for possession had been filed, that an eviction judgment was rendered, or that the Fourth Circuit reversed the eviction, and therefore it never considered terminating McCoy's assistance, which has continued to date.[37] Therefore, HANO argues, it never deprived or attempted to deprive McCoy of a property interest, cannot be held vicariously liable under § 1983, never entered into a lease agreement with McCoy, and did not maliciously prosecute McCoy or abuse the legal process.[38]

First, HANO argues that although McCoy's complaint is not clear regarding what claims are being made against which defendant, it appears that McCoy is alleging that HANO violated her rights when: (1) Phipps arrested her allegedly without probable cause; and (2) IRMC began eviction proceedings against her without a hearing.[39] Here, HANO avers, neither claim has merit because HANO is not vicariously liable for the actions of its employees pursuant to § 1983, and HANO never deprived McCoy of a property right.[40] HANO argues that it is well-established that, as a local governmental agency, it cannot be held vicariously liable for the alleged, isolated unconstitutional actions of its employees or agents, and therefore it is not liable for the allegations regarding Phipps' arrest of McCoy under § 1983.[41]

---

[37] *Id.*

[38] *Id.* at 8.

[39] *Id.* at 9.

[40] *Id.*

[41] *Id.* (citing *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011)).

Furthermore, HANO avers, McCoy's other § 1983 claims against HANO are based on the fact that IRMC attempted to evict her for fighting with another resident.[42] According to HANO, recipients of government public assistance, such as Section 8 vouchers, have a property interest in continuing to receive such assistance, and must be afforded notice and an opportunity to be heard before their benefits can be terminated.[43] Here, HANO contends, it did not rent to McCoy and did not evict her, but instead merely subsidizes her rent for a privately owned, project-based unit.[44] Therefore, HANO argues, the property right that she has with HANO is her housing and financial assistance, which has continued without interruption.[45] Furthermore, HANO avers, although McCoy has a property interest in housing assistance, she does not have a property interest in a specific unit.[46] According to HANO, there is no Fifth Circuit case directly on point, but in *Dixie v. Shrimpus*, a judge in the Northern District of Indiana concluded that, based on Seventh Circuit precedent, a plaintiff who sought damages for being denied residency in a specific community did not have a legitimate claim to entitlement to a specific Section 8 residence.[47]

HANO argues that even if it had received notification of the eviction, which it did not, it would have had the discretion to move McCoy to another unit as long as that unit was project-based.[48] According to HANO, if it had decided to terminate McCoy's assistance, it would have

---

[42] *Id.*

[43] *Id.* at 10 (citing *Goldberg v. Kelley*, 397 U.S. 254 (1970)).

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.* at 10–11 (citing 2014 WL 1207427 (N.D. Ind. Mar. 24, 2014) (citing *Fincher v. S. Bend Heritage Found.*, 606 F.3d 331, 334–35 (7th Cir. 2010))).

[48] *Id.* at 11.

provided her with "the opportunity for an informal review of a decision denying assistance," but because it was never notified of McCoy's eviction, it never took any action, and her assistance continued.[49] Similarly, HANO avers that it did not violate 24 C.F.R. § 966.54, which allows a tenant to submit an informal grievance of a complaint, as McCoy has provided no evidence that HANO refused to allow McCoy to file a grievance.[50]

Next, HANO argues that it did not violate the Violence Against Women Act ("VAWA"), which states in relevant part that an incident of actual or threatened domestic violence, dating violence, or stalking will not be construed as a serious or repeated lease violation by the victim or threatened victim of domestic violence, dating violence, or stalking, or as good cause to terminate the tenancy of, occupancy rights of, or assistance to the victim.[51] HANO argues that McCoy's claim has no merit because: (1) her attempted eviction for fighting with a neighbor did not trigger VAWA; (2) HANO never terminated her assistance; and (3) there is no individual right of action under VAWA.[52] According to HANO, to trigger the protections of VAWA, McCoy would have to be a victim of domestic or dating violence or stalking, or a victim of violence by a member of guest of her household.[53]

Here, HANO argues, if Carter followed McCoy on one occasion, it would not constitute "dating or domestic" stalking.[54] Furthermore, HANO claims, there is no evidence that IRMC

---

[49] *Id.*

[50] *Id.*

[51] *Id* as 12.

[52] *Id.*

[53] *Id.*

[54] *Id.*

attempted to evict McCoy because she was the alleged victim of domestic violence or stalking, but rather, it took action because McCoy was publicly intoxicated and admittedly fought with another tenant.[55] HANO also argues that it did not violate the prohibition within its own policy on terminating assistance to a tenant because of that tenant's status as a victim of domestic or dating violence or stalking, because it never took any steps to terminate McCoy's assistance, and she has continued to receive full rental assistance since the incident.[56] Citing cases largely within the Second Circuit, HANO contends that, furthermore, McCoy has no private right of action under VAWA.[57] In addition, HANO claims that in *Louis v. New York City Housing Authority*, a judge in the Southern District of New York noted in a footnote that under HUD regulations, a tenant who is the victim of domestic abuse may move into a new unit with continued assistance.[58]

Next, HANO argues that it is not liable for abuse of process or malicious prosecution for arrest or "fabrication" of a police report because it was not directly involved in the arrest or prosecution of the plaintiff, and it cannot be held vicariously liable for the actions of Officer Phipps.[59] According to HANO, McCoy cannot present any evidence supporting a claim of abuse of process against HANO PD—or HANO, who is claimed to be vicariously liable for HANO PD—and as such, the claim must be dismissed.[60] Likewise, HANO argues, a claim of malicious

---

[55] *Id.* at 12–13.

[56] *Id.* at 13–14.

[57] *Id.* at 14. (citing *Hobby v. Housing Authority of New Haven*, 2012 WL 3727267 (D. Conn. Jan. 9, 2012); *Esposito v. New York*, 453 F. App'x 37 (2d Cir. 2011); *Calderon v. Yale Univ.*, 75 F. App'x 35 (2d Cir. 2003); *Spinelli v. Sec. of Dep't of Labor*, No. 99-8163, 2006 WL 2990482, at *8 (E.D.N.Y. Oct. 19, 2006); *Lewen v. Edinboro Univ. of Penn.*, No. 10-164, 2011 WL 4527348, at *4 (W.D. Pa. Sept. 26, 2011)).

[58] *Id.* (citing 2016 WL 297563 (S.D.N.Y. Jan. 14, 2016)).

[59] *Id.* at 15.

[60] *Id.*

prosecution would require McCoy to prove that Officer Phipps lacked probable cause to arrest McCoy, which HANO claims McCoy cannot do.[61] In addition, HANO contends, although McCoy alleges that the police report of her arrest was falsified so that Skidmore-Davis could evict her, she has provided no facts to support her position, and therefore cannot meet her burden of proof at trial.[62] For similar reasons, HANO alleges, McCoy cannot support her claim that all of the defendants conspired to have her evicted, as she has provided no evidence to rebut the fact that HANO had no knowledge of the eviction, let alone conspired to make it happen.[63]

Finally, HANO claims that it has no liability for breach of McCoy's lease, because her lease was with Abundance Association, not HANO, and she resided in an apartment owned by Abundance Association.[64]

### B. Plaintiff's Arguments in Opposition to Summary Judgment

In opposition, McCoy claims that HANO's motion for summary judgment is "premature, baseless and a waste of time and effort" designed solely to force Plaintiff to reveal her case prior to trial on the merits.[65] Therefore, McCoy argues, the Court should sanction HANO for trying to evade justice in light of the fact that HANO has direct and vicarious liability for the actions of its employee, Phipps.[66]

As background, Plaintiff alleges that she is a lifetime resident of public housing who used

---

[61] *Id.*

[62] *Id.* at 16.

[63] *Id.*

[64] *Id.*

[65] Rec. Doc. 110-1 at 1.

[66] *Id.* at 2.

to reside in the former Desire Development and once served as a class representative in a class action filed against HANO for breach of contract related to a Memorandum of Understanding executed on June 24, 1996.[67] According to McCoy, the class action ended in a $3 million award and a compromise and settlement agreement, after HUD classified the Desire Development as severely distressed and eligible for participation in the Hope VI Revitalization program.[68] According to Plaintiff, the Estates is a joint venture between HANO and Michaels Group, with IRMC selected by both to be the agent of the joint venture.[69]

McCoy alleges that the former Desire Development consisted of 1,800 units that would be reduced to 400 units, consisting of 200 units on site and 200 units off site.[70] Plaintiff claims that HANO never implemented the plan required under the Memorandum of Understanding, and HUD places HANO in receivership "while revoking the authority of the City of New Orleans in the year 2000 for contravention of the Annual Contract Contribution (ACC)."[71] According to McCoy, since the execution of the Memorandum of Understanding to the present, there have been more than 16 "Administrative Alternations" at HANO, while no administration has successfully implemented the plan calling for extra benefits and protections for public housing tenants, to which they were entitled because the former Desire Development subjected public housing tenants to great social and economic harms, including criminal activity.[72] McCoy contends that HANO's failure to

---

[67] *Id.* at 2, 5.

[68] *Id.* at 2.

[69] *Id.* at 2–3.

[70] *Id.* at 3.

[71] *Id.*

[72] *Id.*

implement and enforce terms and conditions stipulated in the Memorandum of Understanding has created a "nightmare" for residents like McCoy.[73]

According to Plaintiff, in accordance with the "Uniform Relocation plan," she relocated off-site pending revitalization of the Desire Development, with the first right of refusal for re-occupancy under the rehousing plan in connection with Hope VI.[74] Before she relocated, McCoy alleges, she was a long-term public housing tenant.[75] Plaintiff contends, however, that after being displaced and then allowed to return to her unit, she never received a notice of the transfer of interest to a private owner.[76] McCoy alleges that, upon re-occupancy, her status as a public housing tenant was illegally converted to project-based assistance under the HANO Section 8 HCVP without her knowledge or consent.[77] According to McCoy, the illegal conversion of her status deprived her of rights and entitlements afforded to similarly situated residents pertaining to the settlement and compromise agreement entered into by HANO, and McCoy only signed the documents that she was told needed to be signed in order to maintain her assistance.[78] Plaintiff asserts that when she moved to 2937 Oliver White Ave., she reestablished herself as a public housing resident, as HANO has produced no evidence of an executed and approved HCVP application required for project-based assistance until 2015, after this civil matter was filed.[79]

---

[73] *Id.* at 4.

[74] *Id.* at 5.

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *Id.*

McCoy argues that it appears that the interest in the unit was transferred in retaliation for the class action, and to prevent McCoy from enjoying the benefits of the settlement agreement by transferring her interest in her unit to a private company.[80] Furthermore, Plaintiff alleges, HANO conspired with HANO PD and IRMC to violate McCoy's constitutional rights.[81]

McCoy avers that, on April 19, 2014, Phipps of the HANO PD arrested McCoy, the victim of an assault, on charges of public drunkenness and disturbing the peace.[82] According to McCoy, the Memorandum of Understanding between the New Orleans Police Department ("NOPD") and HANO PD specifically mandates that HANO PD only has the authority to respond and handle Code 1 calls for service on HANO's property if those calls are not "Unified Crime Reports" ("U.C.R.") in nature.[83] Plaintiff alleges that assault is an enumerated crime classified as U.C.R., mandating the NOPD as the proper authority to handle the crime.[84] Plaintiff claims that NOPD was never dispatched to the scene, and that HANO PD decided to maintain jurisdiction, despite the U.C.R., by charging McCoy with false crimes in order to evade the duty to contact NOPD.[85] Therefore, McCoy argues, HANO PD, under the direct authority of HANO, violated McCoy's constitutional rights.[86]

Plaintiff asserts that she received a *nolle prosequi* in municipal court exonerating her from

---

[80] *Id.* at 5–6.

[81] *Id.* at 6.

[82] *Id.*

[83] *Id.*

[84] *Id.*

[85] *Id.*

[86] *Id.*

the criminal charges alleged by Phipps and HANO PD, whereas her alleged assailant, Demetria Carter, pled guilty to the charge and was convicted.[87] According to McCoy, The Estates filed a rule for possession and obtained a judgment evicting McCoy.[88] Plaintiff alleges that Phipps was the only witness who testified for The Estates, despite having no evidence or personal knowledge of the incident, and he relied on hearsay in violation of the Code of Evidence.[89] According to McCoy, The Estates lacked the authority to evict her because she was living in the Abundance Apartments, but was evicted by Savoy Place under its One Strike Policy.[90] McCoy contends that the Louisiana Fourth Circuit Court of Appeal ultimately found that The Estates had violated McCoy's due process rights by evicting her.[91]

McCoy avers that genuine, disputed issues of material fact preclude summary judgment, as HANO cannot prove that McCoy was a project-based tenant at the time of the assault, despite its attempt to introduce as evidence unexecuted applications for project-based assistance.[92] Furthermore, Plaintiff alleges, HANO is using an expired Housing Assistance Payments ("HAP") agreement regarding land owned by HANO to allege that HANO had no responsibility in the eviction and due process violations, which expired prior to the assault on April 17, 2014, and the renewal of which was not executed until January 21, 2015.[93]

---

[87] *Id.* at 7.

[88] *Id.*

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] *Id.* at 7–8.

[93] *Id.* at 8.

According to Plaintiff, HANO deprived McCoy of her property interest when "they" filed for a rule of possession that was later granted.[94] McCoy contends that when she was evicted and forced to place a security bond in order to file her appeal, she was deprived of her property interest.[95] Plaintiff avers that, although HANO has claimed that it was never notified of the eviction, the "Management Agreement specifically states that the owner of the PHA a copy of any owner eviction [sic] at the same time it gives notice to the tenant."[96] Furthermore, McCoy claims, HANO has a duty to ensure proper administration of the housing assistance and the management agreement, and delegating responsibility to IRMC does not relieve HANO of its legal duties.[97] In addition, Plaintiff alleges, HANO was directly responsible under the Memorandum of Understanding governing the Hope VI.[98]

According to Plaintiff, Louisiana Civil Code article 2320 attaches vicarious liability to HANO for Phipps' acts and omissions.[99] Here, McCoy alleges, Phipps violated McCoy's constitutional rights by: (1) failing to notify NOPD of the assault as required by law, in order to obtain jurisdictional authority; (2) arresting the victim of a crime based on hearsay of the perpetrator and her co-conspirator; (3) falsifying his report to allege crimes that would allow him to maintain authority; (4) arresting McCoy without probable cause; (5) assisting IRMC with the eviction through his testimony despite knowing that the charges against McCoy had been

---

[94] *Id.*

[95] *Id.*

[96] *Id.*

[97] *Id.*

[98] *Id.*

[99] *Id.* at 8–9.

dismissed.[100] In addition, McCoy avers, HANO is vicariously liable for the acts and omissions of its agent, IRMC, to whom it delegated authority to act, for failing to ensure proper administration of the federal law.[101]

McCoy asserts that at the time of her arrest and eviction, she was a resident of public housing owned and operated by HANO, and the lease effective at the time of the incident involved property owned by HANO.[102] McCoy urges the Court to prevent HANO from attempting to use an expired HAP agreement and unexecuted application for HCVP assistance to controvert her status as a public housing tenant, which she states she has maintained since her birth.[103] Furthermore, Plaintiff alleges, she has produced sufficient evidence to support her claims, and invokes the doctrine of *res ipsa loquitur* in reference to the various court proceedings referenced in her opposition.[104] In addition, McCoy argues that the doctrine of *Rooker-Feldman* bars all arguments raised by HANO related to McCoy's constitutional rights on the grounds that they were already litigated in state court.[105]

## C.   *HANO's Arguments in Further Support of Summary Judgment*

In reply, HANO argues that McCoy failed to supply a separate statement of material facts that she contends present a genuine issue, and has failed to controvert with admissible evidence

---

[100] *Id.* at 9.

[101] *Id.*

[102] *Id.*

[103] *Id.*

[104] *Id.* at 10.

[105] *Id.*

any of HANO's statements of uncontested material facts.[106] Therefore, HANO contends, McCoy's unsupported beliefs and blatant factual misrepresentations are insufficient to defeat its motion.[107] Moreover, HANO argues, McCoy gives no legal argument as to why HANO is not entitled to summary judgment, and instead attempts to expand her claims beyond those pled in her complaint by concocting "a bizarre retaliation theory stemming from a case 20 years ago to divert this Court's attention from her lack of legal or factual support."[108] Finally, HANO asserts, many of the exhibits attached to McCoy's opposition are not admissible in court, and her affidavit is not made on personal knowledge and contradicts documentary evidence.[109]

HANO alleges that summary judgment is not premature because Federal Rule of Civil Procedure 56(b) provides that a motion for summary judgment can be filed at any time until 30 days after discovery, and the Court's scheduling order required HANO to file its motion in sufficient time to be heard no later than March 30, 2016, which HANO did.[110] According to HANO, although McCoy claims that the motion is premature because discovery is ongoing, there is no outstanding discovery between Plaintiff and HANO, nor are any depositions scheduled.[111] HANO avers that McCoy has made an unfounded and vague claim that HANO failed to disclose certain unidentified requested information, but although HANO sent more than 300 pages of responsive documents to McCoy, she never noted any deficiencies, never sought a Rule 37

---

[106] Rec. Doc. 112 at 1.

[107] *Id.*

[108] *Id.*

[109] *Id.*

[110] *Id.* at 2.

[111] *Id.*

conference with HANO, or filed a motion to compel.[112]

Next, HANO claims that McCoy has ignored both the documentary evidence and her own testimony in claiming that she resided in public housing at the time of her arrest in April 2014.[113] According to HANO, although Plaintiff claims that after she moved to 2937 Oliver White Ave. in 2012, she "reestablished herself as a public housing resident," McCoy has presented no admissible evidence to support her claims.[114] HANO contends that McCoy's lease for her current apartment is with Abundance Association, not HANO, and McCoy has admitted that the lease was signed at The Estates offices by a manager of The Estates, that she had no personal knowledge whether HANO was required to get, or ever did get, a copy of the lease, and that no one from HANO signed her lease.[115] Furthermore, HANO asserts, although McCoy alleges that HANO somehow "tricked" her into applying for and receiving a Section 8 voucher, she has produced no evidence to support her claim.[116] Similarly, HANO argues, although McCoy alleges that her interest in the unit was transferred in retaliation for a class action filed 20 years ago, she had no property interest in any specific unit, and has been receiving Section 8 housing assistance for eight years.[117] Moreover, HANO contends, she never pled retaliation in her complaint and cannot add the claim through her opposition to summary judgment.[118]

---

[112] *Id.*

[113] *Id.*

[114] *Id.* at 2–3.

[115] *Id.* at 3.

[116] *Id.*

[117] *Id.* at 3 n.2.

[118] *Id.*

In addition, HANO avers, McCoy has applied for and received Section 8 housing assistance since 2008, when she returned to New Orleans following Hurricane Katrina.[119] HANO cites Plaintiff's deposition testimony, in which she allegedly admitted that the signatures on all the applications for Section 8 housing assistance for both her current and prior addresses were hers, that each application was entitled "Section 8 Housing Choice Voucher Program Application for Continued Occupancy," and that the documents were signed at HANO during meetings with her caseworker.[120] In her deposition, HANO avers, McCoy admitted that she has been receiving housing assistance through Section 8.[121]

Next, HANO contends that there is no merit to McCoy's claim that HANO conspired with HANO PD and IRMC to violate McCoy's constitutional rights, as her claim is based on falsehoods contradicted by her own testimony.[122] According to HANO, although Plaintiff has alleged that the "conspiracy" is evidenced by HANO PD arresting her without authority to do so at the direction of IRMC, McCoy was not arrested for assault, but for municipal code violations of disturbing the peace by fighting and public intoxication, arrests that are within HANO PD's authority.[123] Furthermore, HANO claims, not only does McCoy provide no evidence to support her claim that IRMC's management called Officer Patterson to the scene of the fight, but the call log, which was produced to McCoy, notes that the incident was "field initiated"—meaning that Officer Patterson

---

[119] *Id.* at 3.

[120] *Id.*

[121] *Id.* at 4.

[122] *Id.*

[123] *Id.*

had not been dispatched, but was in the field when he came upon the fight.[124] Furthermore, HANO argues, it could not have been involved in a conspiracy to arrest McCoy because it had no knowledge that she had been arrested, as even McCoy testified that her caseworker did not know that she had been arrested until McCoy told her.[125]

HANO also argues that its assistance to McCoy was never terminated, and in fact, McCoy testified in her deposition that the amount of her assistance actually increased after her arrest.[126] Therefore, HANO argues, McCoy's statement that the HAP contract had expired is an irrelevant red herring, because there was no break in the receipt of her assistance during that time.[127] Indeed, HANO claims, McCoy has also testified that HANO was not involved in either her arrest or her eviction, and stated at her deposition that she is not suing HANO over her eviction, as HANO did not conspire to have her evicted.[128] According to HANO, Plaintiff has been deliberately vague in claiming that HANO deprived her of a property right when "they" filed a Rule of Possession, as HANO was not involved in nor did it have prior knowledge of the eviction proceedings.[129] As such, HANO argues, it is unclear what property right McCoy is referring to.[130]

HANO asserts that McCoy has also made an unsupported claim that "assistance stays with the unit" and that her eviction somehow terminated her assistance, but when a Section 8 participant

---

[124] *Id.*

[125] *Id.*

[126] *Id.* at 5.

[127] *Id.*

[128] *Id.*

[129] *Id.*

[130] *Id.*

is evicted, the housing authority can either move that person to another unit or terminate the assistance.[131] Therefore, HANO alleges, Plaintiff's statement that the assistance stays with the unit is false.[132] Moreover, HANO alleges, McCoy was never physically removed from her apartment, and therefore HANO never had to make such a decision, and McCoy's caseworker never told her that she would have to move to another apartment or lose her assistance.[133]

HANO also urges the Court to reject Plaintiff's argument that HANO must have known of the eviction because the "Management Agreement specifically states that the owner of the PHA [sic] a copy of any owner eviction at the same time it gives notice to the tenant."[134] According to HANO, the Management Agreement states that IRMC may lawfully terminate any tenancy when, in IRMC's judgment, there is sufficient cause for such termination under the terms of the resident's lease, and that IRMC must keep the "owner"—in this case Abundance Association—informed of such actions.[135] Furthermore, HANO contends, the Management Agreement provides that if a public housing unit is involved, IRMC must also keep HANO informed of actions taken.[136] Here, HANO claims, McCoy did not reside in a public housing unit, and therefor IRMC had no obligation under the Agreement to notify HANO of the eviction.[137] In addition, HANO argues, a memorandum of understanding between other parties from 20 years ago has no bearing here and

---

[131] *Id.* at 5–6.

[132] *Id.* at 6.

[133] *Id.*

[134] *Id.*

[135] *Id.*

[136] *Id.*

[137] *Id.*

does not require HANO's intervention in the eviction by a private landlord.[138]

HANO cites *Price v. Housing Authority of New Orleans*, where it contends that two plaintiffs sued HANO for deprivation of § 1983 rights over their eviction by IRMC from their Section 8 unit in The Estates.[139] There, HANO alleges, the plaintiffs argued that HANO had a "duty to monitor and evaluate the administrative and managerial actions of their contractors [and sub-contractors] vested with the management of public housing to ensure compliance with mandates of federal government . . ." and permitted their eviction.[140] According to HANO, another judge in the Eastern District of Louisiana dismissed HANO on other grounds, noting that the plaintiffs had failed to cite any authority under which HANO would have had a "duty to monitor" or "investigate" the actions of other defendants or to prevent the plaintiffs' eviction by the state court.[141] In *Price*, HANO claims, even though the plaintiffs had been evicted and lost their assistance, HANO was dismissed from the suit, and the same result is warranted here.[142]

Next, HANO argues that McCoy did not refute with any legal support HANO's argument that it cannot be held vicariously liable under § 1983 for the actions of Officer Phipps.[143] Instead, HANO claims, McCoy only noted that there is vicarious liability for the actions of an employee for state claims; therefore, her claim that HANO is vicariously liable if Officer Phipps violated her

---

[138] *Id.* at 6–7.

[139] *Id.* at 7 (citing 2012 WL 2513763 (E.D. La. June 27, 2012) (Lemelle, J.)).

[140] *Id.* (citing *Price*, 2012 WL 2513763, at *1).

[141] *Id.* (citing *Price*, 2012 WL 2513763, at *3).

[142] *Id.*

[143] *Id.*

federal constitutional rights has no merit.[144] In addition, HANO alleges, it has no vicarious liability

for the actions of IRMC because IRMC is neither its employee nor agent, as HANO has no

employment or contractual relationship with the company, which is an independent contractor of

Abundance Association.[145] Moreover, HANO contends, although McCoy cites 24 C.F.R. 966.54

as legal authority that HANO is liable for IRMC's acts or omissions, that regulation provides

procedures for tenants of public housing units.[146] According to HANO, because McCoy resides in

a privately owned apartment, the regulation does not apply.[147]

HANO avers that the doctrines invoked by McCoy—namely *res ipsa loquitur* and the

*Rooker-Feldman* doctrine—do not apply in this matter.[148] According to HANO, the Fifth Circuit

has held that this Court's ability to take judicial notice of another court's "factual findings" is only

permissible in narrow circumstances, and those circumstances are not applicable here.[149] Similarly,

HANO contends, application of the *Rooker-Feldman* doctrine is "limited to cases 'brought by

state-court losers complaining of injuries caused by state court judgments rendered before the

district court proceedings commenced and inviting district court review and rejection of those

judgments.'"[150] Here, HANO alleges, McCoy did not lose in state court, and HANO is not seeking

---

[144] *Id.*

[145] *Id.*

[146] *Id.* at 8.

[147] *Id.*

[148] *Id.*

[149] *Id.* (citing *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998)).

[150] *Id.* at 9 (quoting *Storyville Dist. New Orleans, LLC v. Canal St. Dev. Corp.*, 785 F. Supp. 2d 579, 586 (E.D. La. 2011)).

24

a review of the Fourth Circuit's determination that her eviction should be revised.[151] Furthermore, HANO disagrees with McCoy's characterization of the state appellate court decision as holding that there was no probable cause for her arrest, arguing that the Fourth Circuit solely concluded that insufficient evidence was presented at the Rule for Possession hearing to determine whether Plaintiff had violated the One Strike Policy in violation of her lease.[152]

Finally, HANO claims that the exhibits attached by McCoy cannot be considered because most have not been authenticated and are not self-authenticating.[153] For example, HANO avers, the alleged 1996 HANO resolution and alleged 1996 memorandum of understanding and letter of intent are both irrelevant and uncertified.[154] Likewise, HANO asserts, portions of McCoy's affidavit are not based upon her personal knowledge or are contravened by documentary evidence and/or McCoy's testimony, and therefore cannot be considered by the Court.[155]

### III. Law and Analysis

**A.    *Legal Standard***

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[156] When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or

---

[151] *Id.*

[152] *Id.*

[153] *Id.*

[154] *Id.*

[155] *Id.* at 10.

[156] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

weighing the evidence."[157] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[158] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[159]

On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[160] Where the non-moving party bears the burden of proof at trial, as here, the party moving for summary judgment may meet its burden by showing the Court that there is an absence of evidence to support the non-moving party's case.[161] Thereafter, if the moving party satisfies its initial burden, the burden shifts to the non-moving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports her claims.[162] In doing so, the non-moving party may not rest upon mere allegations or denials in her pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential

---

[157] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[158] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[159] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[160] *Celotex,* 477 U.S. at 323.

[161] *Id.* at 325.

[162] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

component of its case."[163] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[164] There is no genuine issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[165]

## B.    *Analysis*

As a preliminary matter, the Court notes that several of the arguments raised by the parties in the instant motion have already been considered in the Court's prior order granting summary judgment in favor of HANO PD and Officer Phipps.[166] Namely, in the Court's prior Order, the Court concluded that: (1) the Court could not take judicial notice of the Municipal Court's *nolle prosequi* and the Fourth Circuit's ruling stating that there was no evidence that McCoy committed the crimes for which she was evicted because the doctrine of judicial notice does not apply to findings of fact made by other courts;[167] (2) the *Rooker-Feldman* doctrine was inapplicable to this matter because no party had asked the Court to overturn the Fourth Circuit's decision that McCoy could not be evicted because there was insufficient evidence that she had violated the one-strike policy;[168] and (3) Officer Phipps had probable cause to arrest McCoy for violation of New Orleans

---

[163] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992)); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[164] *Little*, 37 F.3d at 1075.

[165] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).

[166] *See* Rec. Doc. 143.

[167] *Id.* at 31–32 (citing *Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007)).

[168] *Id.* at 32–33 (citing *Exxon Mobil Corp. v. Saudi Basic Indus., Corp.*, 544 U.S. 280, 284 (2005)).

Municipal Code § 54-403, which bars intentionally engaging in a fistic encounter, or acting in a violent or tumultuous manner toward another whereby any person is placed in fear of safety of her life, limb, or health.[169] As nothing in the instant motion, opposition, or reply contradicts the evidence or legal authority relied upon by the Court in its prior Order, the Court herein adopts its reasoning and conclusions from its prior Order.

Likewise, as she did in opposition to HANO PD Defendants' motion for summary judgment, McCoy argues that summary judgment is premature because discovery is ongoing and HANO has concealed and/or failed to disclose certain information solely in its custody and control.[170] As noted by Defendant, discovery in this matter was scheduled to conclude on March 23, 2016, the day before Plaintiff filed her opposition.[171] Although Plaintiff has since filed multiple motions to compel discovery, the magistrate judge did not grant any motions compelling discovery aimed at HANO. In particular, on May 16, 2016, the magistrate judge denied as both untimely and baseless McCoy's motion to compel discovery against HANO and ordered Plaintiff to pay HANO its attorney fees incurred in responding to the motion.[172] Plaintiff has had an opportunity to supplement her pleadings with additional discovery since she filed her opposition on March 24,

---

[169] *Id.* at 46.

[170] See Rec. Doc. 110 at 1.

[171] Rec. Doc. 50 at 4.

[172] Rec. Doc. 141. The Court notes that McCoy filed a "notice of objection," to the magistrate judge's order, but she did not appeal it to the district court, as required by Federal Rule of Civil Procedure 72 and Local Rule 72.2. See Rec. Doc. 142. Local Rule 72.2 states that "[a] motion to review a magistrate judge's order or an objection to the proposed findings and recommendation of a magistrate judge must be made by filing a motion or objection along with a supporting memorandum. The motion must be noticed for submission to the district judge in the manner provided in these rules for motions." McCoy did not file a motion to appeal and did not set her motion for submission, and therefore her objections are not properly before the district court, and any such objections are waived for purposes of appellate review. See Fed. R. Civ. P. 72.

2016, but has not done so. The complaint in this case was filed on February 9, 2015,[173] and HANO filed the instant motion for summary judgment more than one full year later, on March 9, 2016.[174] Therefore, the Court concludes sufficient discovery has been completed to allow the Court to consider the instant motion at this time.

**1.      Section 1983 Claims**

To plead a § 1983 claim, McCoy is required to allege facts demonstrating that: (1) the defendant violated the Constitution or federal law; and (2) that the defendant was acting under the color of state law while doing so.[175] Although it is difficult to discern from McCoy's complaint which causes of action she is alleging against which parties, it appears that McCoy has claimed that HANO violated her constitutional rights when: (1) Phipps arrested her without probable cause; and (2) HANO evicted McCoy from her housing unit.

**i.      McCoy's Arrest**

As noted above, the Court concluded in its prior Order that Phipps had probable cause to arrest McCoy.[176] Accordingly, the Court cannot conclude that HANO is liable for Phipps' alleged violation of § 1983, as the Court has already concluded that Phipps did not violate § 1983.[177] Although McCoy additionally alleges that HANO is vicariously liable for Phipps' failure to notify

---

[173] Rec. Doc. 1.

[174] Rec. Doc. 86.

[175] *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

[176] Rec. Doc. 143 at 46.

[177] Moreover, as correctly asserted by HANO, vicarious liability is inapplicable to § 1983 suits. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

NOPD of the alleged assault in order to maintain HANO PD's jurisdiction over the case,[178] McCoy cites no legal authority that would support the conclusion that her constitutional rights were violated by Phipps' alleged failure to refer the case to NOPD. Moreover, McCoy does not attach any evidence to support her conclusory allegation that Phipps falsified his police report in order for HANO PD to maintain authority over the case. Accordingly, the Court concludes that no genuine, disputed issue of material fact remains concerning any vicarious liability that HANO may have for the actions of HANO PD and Officer Phipps, and therefore HANO is entitled to judgment as a matter of law. The Court thus turns to HANO's arguments regarding the alleged deprivation of McCoy's property rights in connection to the eviction proceedings instituted against her.

### ii. McCoy's Eviction

Much of HANO's motion is premised on the argument that McCoy cannot maintain a § 1983 claim against HANO because she resided in private Section 8 housing, rather than public housing. Therefore, the Court begins by assessing whether HANO has met its summary judgment burden of showing that no genuine, disputed issue of fact on this point exists and HANO is entitled to judgment as a matter of law. As background, the Court notes that the history of the Abundance Square development, where McCoy resides, is succinctly explained in *Abundance Square Associates v. Williams*.[179] There, the Fourth Circuit Court of Appeal of Louisiana stated that the Desire Housing Projects were once owned and operated by HANO, but that in 1992, the federal government launched the Hope VI program to revitalize dilapidated public housing programs,

---

[178] Rec. Doc. 110-1 at 9.

[179] 2010-0324 (La. App. 4 Cir. 3/23/11); 62 So. 3d 261. Although the Court may not take "judicial notice" of these facts for the purposes of the instant motion, the Court nevertheless relies on *Williams*' summary of the relevant housing developments as context for the parties' positions in this matter.

which encouraged local public housing authorities to form public/private partnerships with private sector developers and management firms.[180] In *Williams*, the court explained that in October of 2002, HANO leased 98 acres of real property, the site of the former Desire Housing Projects, to Abundance Association, with the lease set to expire in 2077.[181] According to the *Williams* court, of the 73 units in the Abundance Square Apartments, 48 would be operated as "public housing," and 14 would be operated as Section 8 "project-based vouchers."[182]

Relying on this background, HANO avers that McCoy resided in one of the Section 8 project-based units.[183] As evidence in support of its motion, HANO asserts that McCoy receives housing assistance from HANO through its Section 8 program, and attaches three applications for "Section 8 Housing Choice Voucher Program."[184] The applications are signed by McCoy and dated September 11, 2013, October 13, 2014, and September 25, 2015, respectively.[185] In her deposition, McCoy confirmed that the signatures were hers.[186] HANO also asserts that McCoy resides at 2937 Oliver White St. in a privately owned apartment in The Estates, attaching as evidence McCoy's lease, as well as HAP Contracts Part I and II.[187] The lease states that McCoy resides at 2937 Oliver White Ave., runs for a period from January 1, 2014 to December 31, 2014,

---

[180] *Id.* at 262.

[181] *Id.*

[182] *Id.* at 263.

[183] Rec. Doc. 86-3 at 3.

[184] *See* Ex. W, Rec. Doc. 86-26.

[185] *See id.* at 6, 12, 17.

[186] *See* Dep. of Bridgette McCoy, Rec. Doc. 112-1, at 114:13–22; 116:6–16.

[187] *See* Rec. Docs. 86-4, 86-5.

and states that the lease is with "Abundance Square Apartments."[188] The HAP contract, also

attached by HANO, states that it is a contract between the public housing agency (HANO) and the

"owner" (Abundance Association).[189] Pursuant to the HAP, HANO was required to make housing

assistance payments to the owner for the months during which a unit is leased and occupied by an

eligible family.[190] In an attachment to the HAP contract, McCoy's unit, 2937 Oliver White St., is

identified as one of the eligible units.[191] Relying on the same attachment, HANO asserts that it

does not own the unit in which McCoy resides.[192] Instead, HANO contends, Abundance

Association operates the Abundance Apartments, and owns the unit in which McCoy resides.[193]

As evidence, HANO attaches the "Regulatory and Operating Agreement for Abundance Square

Apartments," an agreement between HANO and Abundance Association, which states that

HANO, the owner of certain real property on which the Desire housing complex was located,

would give to Abundance Association a leasehold interest in the land involving the "construction,

ownership and operation of rental housing on" the site.[194]

        In addition, HANO avers that Abundance Association hired IRMC to handle the

operations, including evictions, at the Abundance Apartments, attaching as evidence the

---

[188] Rec. Doc. 86-4 at 1–2.

[189] *See* Rec. Doc. 86-5 at 5.

[190] *See id.* at 3.

[191] *Id.* at 9.

[192] *See* Rec. Doc. 86-1 at 1.

[193] *Id.*

[194] Rec. Doc. 86-6 at 5.

management agreement between Abundance Association and IRMC.[195] Pursuant to the Management Agreement, IRMC agreed to be Abundance Association's agent at the Abundance Apartments and to manage operations there.[196] HANO also attaches an affidavit by Toni Battiste, McCoy's caseworker, stating that McCoy receives financial and housing assistance from HANO toward project-based housing in The Estates and that she does not reside in public housing.[197] Furthermore, Battiste's affidavit states that HANO does not own the unit in which McCoy resides, which is privately owned and that IRMC handles all evictions for residents of The Estates without approval or authorization from HANO.[198]

On a motion for summary judgment, where the non-moving party bears the burden of proof at trial, as here, the party moving for summary judgment may meet its burden by showing the Court that there is an absence of evidence to support the non-moving party's case.[199] Here, HANO has met its burden by alleging that McCoy resided in private housing and attaching multiple contracts, leases, and affidavits to support its allegation. Thus, the burden then shifts to the non-moving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports her claims.[200] In doing so, the non-moving party may not rest upon mere allegations or denials in her pleadings, but rather must set forth "specific facts showing the

---

[195] *See* Rec. Doc. 86-8.

[196] *Id.* at 3.

[197] Rec. Doc. 86-21 at 2.

[198] *Id.*

[199] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[200] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

existence of a 'genuine' issue concerning every essential component of its case."[201] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[202]

Here, even setting aside HANO's arguments that McCoy relies on evidence that would not be admissible at trial because the exhibits she attaches are neither authenticated nor self-authenticating, the Court notes that McCoy's attempts to create a genuine, disputed issue of material fact concerning the evidence presented by HANO are, as HANO contends, largely a "red herring." For example, McCoy argues that she was not a project-based tenant in 2013 or 2014, the years at issue in this litigation, because the Section 8 applications attached by HANO were neither executed nor approved by HANO.[203] She also flatly denies that her unit at 2937 Oliver White was privately owned at the time of the incidents in this action, alleges that HANO owned both the unit and the land where it is located, and denies that Abundance Association operates Abundance Apartments or owns the unit.[204] However, once the moving party meets its initial burden on a motion for summary judgment, the burden shifts to Plaintiff to not only assert disagreement with the facts relied upon by the moving party, but to "identify specific evidence in the record, and articulate" precisely how that evidence supports her claims.[205]

---

[201] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992)); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[202] *Little*, 37 F.3d at 1075.

[203] Rec. Doc. 110-2 at 1.

[204] *Id.* at 2.

[205] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

McCoy makes a number of arguments to support her theory that HANO cannot prove that she resided in Section 8 housing. She argues that: (1) her status as a public housing tenant was "illegally converted to project-based assistance" without her knowledge or consent; (2) she only signed documents as needed to maintain her assistance; (3) "she reestablished herself as a public housing resident" and that HANO cannot prove that she applied for and was approved for project-based assistance until 2015, after this case was filed; (4) and finally, her "interest in the unit" was transferred in retaliation for a class action filed nearly 20 years prior to the commencement of this litigation.[206] However, beside "conclusory allegations" and "unsubstantiated assertions," McCoy does not cite any evidence to support her claim that she resided in public housing. The only evidence submitted by McCoy is an affidavit in which she states that she has "been a lifetime resident of public housing at former Desire Development revitalized under Hope VI Grant Agreement allocated by United States Department of Housing and Urban Development," that her "public housing status was converted by Housing Authority of New Orleans without her knowledge or consent," and that she was never told that her residential status had changed to Section 8.[207] However, while the Court may not make credibility determinations on a motion for summary judgment, a party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.[208]

Here, except via her affidavit and arguments, McCoy does not present any evidence to

---

[206] Rec. Doc. 110-1 at 6.

[207] Rec. Doc. 110-15 at 2.

[208] *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000). *But cf. S. U.S. Trade Ass'n v. Unidentified Parties*, No. 10-1669, 2012 WL 579439, at *3 (E.D. La. Feb. 22, 2012) (Fallon, J.) (declining to grant summary judgment on the basis of self-serving affidavits in case where the issues in controversy depend largely on the credibility of the plaintiff).

counter the contrary evidence submitted by HANO. For example, McCoy criticizes HANO's reliance on a HAP contract that she alleges expired prior to the assault on April 17, 2014, and that was not renewed until January 21, 2015.[209] However, McCoy attaches no evidence to support her theory that once the HAP contract—which lays out the conditions of the relationship between HANO and Abundance Association as the owner of McCoy's unit at 2937 Oliver White, among other residences—temporarily expired, her unit automatically converted to "public housing" until the HAP contract was renewed eight months later.[210] Nor does McCoy rebut the evidence presented by HANO showing that, even when the HAP contract expired, McCoy continued to receive assistance from HANO during that time.[211] Furthermore, McCoy attaches no evidence to support her argument that HANO owned or controlled McCoy's unit, asserting only that because HANO owned the real property on which McCoy's unit was located, it must have owned and operated the Abundance Apartments.[212] Similarly, McCoy does not counter the evidence presented by HANO that McCoy's lease for her apartment is with Abundance Association, not HANO.[213]

Likewise, McCoy does not present more than "a scintilla of evidence" to rebut HANO's arguments that it cannot be held liable under § 1983 for McCoy's eviction because IRMC, rather than HANO, handled evictions at the Abundance Apartments; HANO does not approve or authorize evictions at the Abundance Apartments; and HANO never discontinued or interrupted McCoy's housing assistance, and therefore never deprived McCoy of the only property interest

---

[209] *Id.* at 8.

[210] *See* Rec. Doc. 110-13.

[211] *See* Rec. Doc. 86-24.

[212] Rec. Doc. 110-2 at 2.

[213] Rec. Doc. 86-4.

that HANO actually provides her. First, McCoy admits in her statement of contested facts that Abundance Association hired IRMC to handle the operations, including evictions, at Abundance Apartments.[214] Second, although Plaintiff denies HANO's claim—as asserted in Battiste's affidavit—that it does not authorize or approve evictions at the Abundance Apartments, she does not attach any evidence to challenge the assertion.[215] Instead, McCoy argues that the "Management Agreement" specifically states "that the owner of the PHA [sic] a copy of any owner eviction at the same time it gives notice to the tenant."[216] However, as HANO points out, the Management Agreement, which is between Abundance Association and IRMC, states only that if a public housing unit is involved, IRMC must inform HANO of any actions taken to evict a tenant.[217] Thus, while McCoy is correct that if her unit was a public housing unit, HANO should have been informed of her eviction, because she has presented no evidence to challenge the documents and affidavits produced by HANO showing that McCoy's unit was privately owned, the provision relied upon by McCoy does not support her argument that HANO must have been informed of McCoy's eviction. Furthermore, McCoy cites no authority to support her allegation that HANO has a legal duty to "ensure proper administration of the housing assistance and the Management agreement" regardless of the delegation of any responsibility to IRMC.[218]

Finally, McCoy does not substantively rebut HANO's argument that HANO never

---

[214] *Id.*

[215] *See id.*

[216] Rec. Doc. 110-1 at 8.

[217] Rec. Doc. 110-3 at 7.

[218] McCoy cites the Memorandum of Understanding governing the Hope VI project, but cites no specific provision in the agreement that would impose the kind of duty that McCoy alleges existed in this matter. See Rec. Doc. 110-3.

discontinued or interrupted McCoy's housing assistance after the Rule for Possession had been filed, arguing only that "when Plaintiff was evicted from her unit her assistance was terminated as the assistance stays with the unit."[219] However, McCoy cites no evidence or legal authority to support her claim, and in fact, as noted by HANO, she admitted in her deposition that the rent subsidy that she received from HANO did not change after her arrest.[220]

McCoy makes a number of additional arguments regarding HANO's alleged role in depriving McCoy of a property interest, including a claim that HANO acted in retaliation against McCoy because of the 1996 settlement of a class action in which McCoy was a plaintiff, that HANO tricked McCoy into changing her status from a public housing resident to a resident in Section 8 housing, and that it is vicariously liable because Phipps testified in the eviction proceedings against McCoy.[221] However, Plaintiff once again fails to present any evidence or legal authority to supplement her allegations, besides her self-serving affidavit, which the Court has already concluded is insufficient on its own to defeat summary judgment. Therefore, the Court concludes that taking all facts in the light most favorable to the non-moving party, Plaintiff has nevertheless failed to meet her burden in opposition to summary judgment of showing a genuine, disputed issue of material fact, and HANO is therefore entitled to judgment as a matter of law regarding McCoy's claim that HANO violated § 1983 by depriving McCoy of a property right in her Abundance Apartments unit.

---

[219] Rec. Doc. 110-2 at 3.

[220] Rec. Doc. 112-1 at 127:20–24.

[221] *See* Rec. Doc. 110-1 at 7–9.

### iii.  Conspiracy

In her opposition, McCoy broadly alleges that there was a conspiracy to violate her constitutional rights, as evidenced by HANO PD arresting her without authority to do so at the direction of IRMC. Although McCoy's conspiracy claims and her general claim that HANO violated § 1983 by allegedly authorizing her unconstitutional arrest and depriving her of a property interest without due process overlap and are difficult to separate, bald allegations that a conspiracy existed are insufficient to overcome a motion for summary judgment.[222] In the Fifth Circuit, "Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based."[223] Although McCoy repeatedly refers to each of the defendants in this matter as co-conspirators who jointly operated to deprive McCoy of her civil rights, she does not provide summary judgment evidence to specifically support a claim that HANO conspired to deprive McCoy of any rights. Moreover, McCoy testified in her deposition that she did not believe that HANO was involved in a conspiracy to evict her.[224] To succeed on a claim of conspiracy under § 1983, a plaintiff must show: (1) "an agreement between private and public defendants to commit an illegal act," and (2) "an actual deprivation of constitutional rights."[225] As McCoy has testified that HANO was not involved in any such agreement, and does not present evidence to contradict her deposition testimony, Plaintiff cannot meet her summary judgment burden to show that there is a genuine, disputed issue of material fact regarding her conspiracy

---

[222] *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991).

[223] *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987).

[224] Rec. Doc. 112-1 at 143:6–11.

[225] *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994).

claim against HANO.

### 2.      24 C.F.R. § 966.54

Next, HANO urges the Court to dismiss any claim against it alleging that HANO violated 24 C.F.R. § 966.54, which allows a tenant to submit an informal grievance of a complaint.[226] HANO contends that McCoy has provided no evidence that HANO refused to allow McCoy to file a grievance.[227] In her opposition, Plaintiff argues that HANO is vicariously liable for the acts of its agent, IRMC, who allegedly failed to ensure compliance with 24 C.F.R. § 966.54.[228] The only evidence cited by McCoy is the grievance procedure statute itself, and McCoy does not show IRMC's actions failed to comply with the grievance procedure requirements.[229] Moreover, besides asserting without evidence that IRMC was HANO's agent, McCoy cites no contract, case law, or agreement under which HANO would have any duty to monitor or investigate the actions of IRMC.[230] The only legal authority cited by Plaintiff is Louisiana's general vicarious liability statute, Louisiana Civil Code article 2320, which states that "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." However, as McCoy presents no evidence of a master-servant relationship between HANO and IRMC, nor evidence of which of IRMC's actions violated the grievance procedure requirements, the Court concludes that HANO is entitled to judgment as

---

[226] Rec. Doc. 86-3 at 11.

[227] *Id.*

[228] Rec. Doc. 110-1 at 9.

[229] *See* Rec. Doc. 110-14.

[230] *Cf. Price v. Hous. Auth. of New Orleans*, No. 12-992, 2012 WL 2513763, at *3 (E.D. La. June 27, 2012) (Lemelle, J.).

a matter of law on Plaintiff's 24 C.F.R. § 966.54 claim.

### 3.   VAWA Claims

HANO avers that it is entitled to summary judgment on McCoy's VAWA claim because: (1) the attempt to evict McCoy did not trigger VAWA; (2) HANO never terminated her assistance; and (3) there is no individual right of action under VAWA.[231] McCoy's opposition does not address HANO's arguments regarding VAWA. However, VAWA in relevant part prohibits terminating assistance to tenants who have been the victims of actual or threatened domestic violence, dating violence, or stalking on the basis that such victims have violated their lease.[232] Here, McCoy has admitted in her deposition that the rent subsidy that she received from HANO did not change after her arrest,[233] and presents no evidence to contradict the claim of McCoy's caseworker, via affidavit, that HANO never began a process to terminate her assistance.[234] Therefore, setting aside the question of whether VAWA even provides a private right of action for such claims, which it appears the Fifth Circuit has not yet addressed, Plaintiff has not met her summary judgment burden of producing evidence to show that a genuine, disputed issue of material fact exists that would preclude summary judgment in favor of HANO on Plaintiff's VAWA claim.

### 4.   Abuse of Process

In order to succeed on an abuse of process claim, a plaintiff must prove: "(1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular

---

[231] Rec. Doc. 86-3 at 12.

[232] 24 C.F.R. § 5.2002.

[233] Rec. Doc. 112-1 at 127:20–24.

[234] Rec. Doc. 86-21.

prosecution of the proceeding."[235] HANO argues that because it was not directly involved in either the arrest or eviction proceedings, it can only be held liable for abuse of process if it is vicariously liable for the alleged abuse of process by HANO PD. McCoy does not address HANO's abuse of process argument, but the Court can find no evidence presented by Plaintiff suggesting that HANO was directly involved in any alleged abuse of process. In its prior Order, the Court concluded that HANO PD could not be held liable for abuse of process because McCoy did not substantiate any allegation that Phipps arrested McCoy or testified before the state trial court because of an ulterior motive to coordinate with HANO or any other party in order to evict McCoy.[236] Accordingly, Plaintiff cannot maintain a claim that HANO is vicariously liable for Phipps' or HANO PD's alleged abuse of process.

### 5. Malicious Prosecution

Likewise, in order to prove a claim for malicious prosecution, a plaintiff must show: "(1) the commencement or continuance of an original criminal or civil proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff."[237] HANO argues that it cannot have vicarious liability for the arrest of McCoy because Phipps had probable cause to arrest McCoy based on his investigation.[238] In its prior Order, the Court has already

---

[235] *Waguespack, Seago and Carmichael v. Lincoln*, 1999-2016 (La. App. 1 Cir. 9/22/00); 768 So. 2d 287, 290–91.

[236] *See* Rec. Doc. 143 at 49.

[237] *Lemoine v. Wolfe*, 2014-1546 (La. 3/17/15); 168 So. 3d 362, 367 (quoting *Jones v. Soileau*, 448 So. 2d 1268, 1271 (La. 1984)).

[238] Rec. Doc. 86-3 at 15.

concluded that Phipps had probable cause to arrest McCoy, and that therefore McCoy could not succeed on a claim of malicious prosecution against HANO PD or Phipps.[239] Accordingly, HANO cannot be held vicariously liable for malicious prosecution.

## IV. Conclusion

For the reasons stated above, the Court concludes that HANO did not deprive McCoy of a property interest, and therefore cannot be held liable for violating her due process rights pursuant to § 1983. Furthermore, HANO is not vicariously liable for HANO PD and Phipps' allegedly unconstitutional arrest of McCoy, because the Court has previously concluded that Phipps' arrest of McCoy was not unconstitutional. Furthermore, McCoy has failed to produce evidence at the summary judgment stage to show that HANO is directly or vicariously liable for malicious prosecution or abuse of process, for violating VAWA, or for violating 24 C.F.R. 966.54. Therefore, HANO has met its summary judgment burden of showing that there is no genuine, disputed issue of material fact, and it is entitled to judgment as a matter of law. Accordingly,

**IT IS HEREBY ORDERED** that HANO's "Motion for Summary Judgment"[240] is **GRANTED**.

**NEW ORLEANS, LOUISIANA,** this ___2nd___ day of September, 2016.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[239] Rec. Doc. 143 at 50.

[240] Rec. Doc. 86.